**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

PUEBLO HOSPITALITY, LLC, a Colorado limited liability company d/b/a VALU STAY INN & SUITES

       Plaintiff,

v.

CITY OF PUEBLO, COLORADO; HEATHER GRAHAM, an individual, in her capacity as the Mayor of the City of Pueblo, Colorado; PUEBLO REGIONAL BUILDING DEPARTMENT, COLORADO

       Defendants

---

## COMPLAINT

---

    Plaintiff Pueblo Hospitality, LLC, by and through undersigned counsel, hereby lodges this Complaint against the Defendants named herein and alleges as follows:

### PRELIMINARY STATEMENT

    1.    This action asserts, *inter alia*, constitutional and civil conspiracy claims against public entities and officials, including inverse condemnation, due process and equal protection violations, and tortious interference, stemming from a concerted effort to unlawfully target and shutter the Plaintiff's business, thereby causing Plaintiff's business to be destroyed.  As detailed below, Defendants City of Pueblo, Mayor Heather Graham, and the Pueblo Regional Building Department ("PRBD"), acting in concert, deliberately made it impossible for Plaintiff, a hotel operator, to renew its business license by imposing unprecedented and burdensome requirements, failing to provide proper notice or due process, and arbitrarily terminating utility services at

1

Plaintiff's hotel. These actions, culminating in the severe damage, total devaluation of Plaintiff's hotel and ultimate sale, were driven, upon information and belief, by Mayor Graham's political agenda to score points with voters by fulfilling her campaign promise to reduce crime and homelessness in Pueblo. Mayor Graham singled out Plaintiff's Valu Stay Inn & Suites as a scapegoat, treating it differently from its historical treatment by the City and, upon information and belief, in contrast to other hotels in Pueblo, resulting in catastrophic harm to Plaintiff's business and property.

2.      Plaintiff has a proven track record of acquiring distressed properties, such as the Valu Stay Inn & Suites located at 2001 Hudson Ave, Pueblo, Colorado (the "Hotel"), and transforming them into viable businesses that serve the local community. Acquired at a foreclosure sale in 2012, the Hotel was successfully operated by Plaintiff for over a decade, providing nightly and weekly stays without Plaintiff facing any issues in renewing its business license until 2023. However, upon information and belief, the election of Defendant Heather Graham as Mayor in November 2023 marked a turning point. Mayor Graham, having campaigned on a platform to lower crime in Pueblo, sought to bolster her political image by targeting the Hotel, which she falsely associated with criminal activity driven by the area's homeless population, not the Hotel's customers or operations.

3.      Upon information and belief, Mayor Graham, in collaboration with the City and PRBD, orchestrated a campaign to shut down the Hotel by imposing new and arbitrary inspection requirements, slowing the license renewal process, and treating Plaintiff differently than it had been treated for the prior eleven years and, upon information and belief, differently from other hotels in Pueblo. From 2012 to 2023, the City and PRBD routinely approved Plaintiff's business

license renewals based on consistent building conditions.  In contrast, starting in 2023, inspectors demanded changes to conditions previously deemed acceptable, continuously updating lists of requirements that delayed approvals.  Unlike other hotels in Pueblo, which, upon information and belief, continued to receive timely license renewals without such heightened scrutiny, Plaintiff faced an unrelenting and discriminatory process designed to prevent compliance.

4.    The Defendants' actions escalated in June 2024 when, without proper notice or an opportunity to contest, PRBD, in concert with the City and, upon information and belief, under Mayor Graham's influence and participation, terminated electricity and other utilities to the Hotel. This abrupt shutoff, which deviated from the City's and PRBD's past practices of providing notice and alternatives (e.g., temporary power) to maintain safety systems, left the Hotel's security and fire alarm systems inoperable.  Unlike prior interactions where Plaintiff was afforded due process, and unlike other hotels that, upon information and belief, were not subjected to such drastic measures for similar violations, the utility termination was executed without regard for Plaintiff's procedural rights. The Pueblo Fire Department had explicitly advised against cutting utilities to preserve safety systems, yet Defendants proceeded, rendering the Hotel vulnerable to looting and vandalism.

5.    As a direct result of Defendants' actions, including the Mayor's defamatory statements in April 2024 falsely labeling the Hotel's operations as "slum lording" and a "cash cow," and the improper utility shutoff, the Hotel suffered catastrophic damage by October 2024. Completely stripped of plumbing fixtures, copper wiring, and other essentials due to break-ins enabled by the lack of security systems, the Hotel was rendered valueless.  Plaintiff, despite diligently working with the Building, Fire, and Public Health and Environment Departments to

meet inspection demands, was unable to mitigate the destruction caused by Defendants' targeted and discriminatory conduct.

6.     Upon information and belief, the Mayor Graham's politically motivated targeting of the Hotel was driven by her desire to claim progress on her campaign promise to reduce crime, falsely attributing over 1,600 police calls to the Hotel's operations when, in fact, nearly all of these police calls were related to the homeless population in the surrounding area, over which Plaintiff had no control.  This discriminatory treatment, marked by differential standards, lack of due process, and failure to follow established protocols, violated Plaintiff's constitutional and statutory rights, destroyed its business, and caused significant economic harm.  Plaintiff seeks redress for these egregious wrongs, which have deprived it of its property and livelihood.

7.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial damages, including the total deprivation of the value of the Hotel; approximately $500,000 in development and conversion costs incurred to convert the Hotel to an apartment complex with an ACE Hardware store; and the loss of future opportunity and expectancy interests, including anticipated revenue from the ACE Hardware business and the apartment complex.

## THE PARTIES

8.     Plaintiff Pueblo Hospitality, LLC is a Colorado limited liability company which operated the Hotel.

9.     Defendant City of Pueblo is a city in the state of Colorado, a municipal corporation.

10.    Defendant Mayor Heather Graham is sued in her individual capacity and official capacity as the Mayor of the City of Pueblo, Colorado.

11.   Defendant Pueblo Regional Building Department is a quasi-governmental agency that is the enforcing authority of adopted major and minor regulatory codes for Pueblo County.

## JURISDICTION AND VENUE

12.   Personal jurisdiction is proper in this case as Plaintiff is a Colorado limited liability company with its principal place of business, citizenship, and center of commercial activity in Pueblo, Colorado; and the Defendants are, upon information and belief, Colorado residents and citizens, thereby establishing a substantial nexus to the state and satisfying the requirements for personal jurisdiction.

13.   Subject matter jurisdiction is appropriately vested in this Court pursuant to 28 U.S. Code § 1331, which confers this Court original jurisdiction on all civil actions arising under the Constitution, laws, or treaties of the United States.  This Court has the authority to hear and decide cases involving the United States Constitution.

14.   This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, which provides a cause of action for deprivations of federal rights under color of state law.

15.   This Court possesses both personal jurisdiction over the Defendants, based on their residency and citizenship in Colorado, and subject matter jurisdiction over the claims asserted, as they arise under the United States Constitution.  Therefore, this Court is the appropriate venue for adjudicating the present dispute between the Colorado residents, and Plaintiff respectfully requests that the Court exercise its jurisdiction accordingly.

16.   Venue is also proper in this Court pursuant to 28 U.S. Code § 1391 because the Defendants are, upon information and belief, Colorado residents.

**GENERAL ALLEGATIONS**

17.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

18.    Upon the acquisition of the Hotel in 2012, Plaintiff began providing the customers and tourists of Pueblo with nightly and weekly hotel stays.

19.    For over a decade (from 2012 to 2023), Plaintiff had regularly received, and had never been denied, its business license renewal application.

20.    On or about December 31, 2023, Plaintiff's business license expired.

21.    Per its usual and accepted conduct, beginning in September-October 2023, Plaintiff scheduled the necessary inspections in advance to renew its business license.

22.    The process to renew its business licensed in 2023 was significantly more burdensome than in prior years.

23.    The inspectors of the three Departments (Building, Fire, and Public Health and Environment) who had previously signed off on the *same* building conditions for the past eleven years began requiring unprecedented and burdensome changes to the conditions of the building. In other words, these inspectors suddenly had new requirements for Plaintiff to pass the inspections.  Every time an inspector inspected the building, a new list of items was presented to Plaintiff that Plaintiff was required to work on in order to pass the inspection.

24.    Plaintiff actively worked with all three Departments (Building, Fire, and Public Health and Environment) to comply with the Departments' continuously updated list of demands and made the requested changes.

25.    Based on the interactions with each Department and their inspectors, the new and burdensome requirements, the updated lists of items to work on provided to Plaintiff at *each and*

6

*every* inspection, and the speed at which the inspection approval process was progressing, it was clear to Plaintiff that the Departments were slowing down the process so that Plaintiff's business license would not be renewed in a timely manner.

26.     It was clear to Plaintiff that the City's and PRBD's attitude towards Plaintiff has changed dramatically – there was a lack of cooperation and dislike expressed by the City and PRBD toward Plaintiff.

27.     On April 8, 2024, Plaintiff received a Notice and Order to Comply from the City License Officer, City of Pueblo, State of Colorado (the "April 8 Notice") by which Plaintiff was notified of certain violations under Pueblo Municipal Code.

28.     Pursuant to the April 8 Notice, Plaintiff had 15 days to remedy the violations.

29.     Pursuant to the April 8 Notice, if Plaintiff failed to comply, its business license would be revoked.

30.     Given that the April 8 Notice only gave Plaintiff 15 days to remedy the violations and knowing that it would be impossible to comply with the April 8 Notice within that short time frame, Plaintiff voluntarily closed the Hotel on April 18, 2024, while continuing to work with the three Departments on the outstanding items to pass the necessary inspections to renew its business license.

31.     After Plaintiff closed the Hotel, Plaintiff locked up the entire building and hired a security team to monitor the Hotel 24/7.

32.     After Plaintiff closed the Hotel, on or about April 25, 2024, the newly elected Mayor Graham orchestrated a press conference and provided an interview to KKTV news station ("KKTV") wherein she stated:

This means that the city is taking a very hard stance on any facility that is operating this way, and in my words, slum lording their residents into living this way, this is a cash cow for this business owner. I know he has several other properties throughout Colorado and to allow my community members to live in the filth, is devastating, and as far as I'm concerned this person should be thrown in federal prison.

33.    The statement was published by KKTV on April 25, 2024 and was updated on April 26, 2024.

34.    As of the date of the filing of this Complaint, the article and interview are still posted on KKTV's website.

35.    On April 25, 2024, while Mayor Heather Graham was present at the Hotel with members of the press, a law-enforcement officer served Plaintiff's employee with a Search Warrant.

36.    According to the Search Warrant Inventory provided to Plaintiff's representative on May 3, 2024 during an in-person meeting (referenced in the paragraphs below), officers removed the following items from the Hotel on April 25, 2024:

    i.   Boxes A, B, C, D containing guest folios, room receipts, and all documents associated with guest registration.

    ii.   Three binders containing annual sales receipts and reports.

    iii.   Yearly payment-method reports from June 2021 through April 2024.

    iv.   All financial records associated with guest payments or Hotel purchases contained in multiple folders.

    v.   Prior check-out documentation.

37.    None of the seized items identified in paragraph 36 have ever been returned to Plaintiff.

38.     Also on April 25, 2024, Plaintiff was notified by the Sales Tax Division that it was initiating a sales/use tax audit and requiring Plaintiff to produce the following records for the period April 2021 through March 31, 2024:

    i.     Depreciation schedule and corresponding invoices for any equipment purchased in the audit period.

    ii.     Accounts payable register for the audit period for invoice sampling.

    iii.     Registers and folios for all lodging-deduction stays exceeding 30 days, including payment-method and accounting information.

    iv.     Accrual reports for the audit period.

39.     Because the documents listed in paragraph 36 had been seized and remained in the possession of law-enforcement authorities, Plaintiff was unable to provide complete records to the Sales Tax Division in response to the audit request.

40.     As a direct result of Plaintiff's inability—caused by the seizure—to produce the requested documentation, the Sales Tax Division assessed Plaintiff $126,368.75 in tax liability, plus penalties, interest, and penalty-interest, for a total assessment of approximately $240,000.00.

41.     Despite the harmful statements made by Mayor Graham on April 25, 2024, Plaintiff continued working with all three Departments on the outstanding items to pass the necessary inspections to renew its business license.

42.     On May 3, 2024, Plaintiff received a Violation Notice from the PRBD, stating various violations of the Code and/or Ordinances of the City and County of Pueblo, Colorado (the "May 3 Notice").

43.     Pursuant to the May 3 Notice, proper permits must be obtained for the required repairs, and licensed contractors are required to obtain proper permits and inspections.

44.     On May 3, 2024, an in-person meeting was held at the PRBD for all three Departments to explain to Plaintiff the alleged property's code violations and how to correct said violations.

45.      Representatives of Plaintiff, the PRBD, the Pueblo Fire Department, and Pueblo Department of Public Health and Environment attended the May 3, 2024 meeting.

46.     At the May 3, 2024 meeting, every Department presented an executive summary of alleged violations and deliverables they expected.

47.     Among other things, the Public Health and Environment Department requested two deliverables from Plaintiff: a meth investigation report and an asbestos inventory report.

48.     During the May 3, 2024 meeting, Plaintiff reiterated its commitment to remedy all violations with a major remodel.

49.     During that May 3, 2024 meeting, Mr. Rahmani, on behalf of Plaintiff, promised to make all corrections requested by the Departments, no matter the cost.

50.     During the May 3, 2024 meeting, the attendees also discussed future plans and steps to reopen the Hotel.

51.      During the May 3, 2024 meeting, the Pueblo Fire Department advised the other departments, including PRBD, that "it was best to maintain the fire alarm for the property and not cut utilities."

52.     During the May 3, 2024 meeting, PRBD requested a letter of intent with a narrative from Plaintiff.

53.    While Mayor Graham did not attend the May 3, 2024 meeting, upon information and belief, she received a copy of the meeting minutes on or about May 8, 2024.

54.    As requested by the PRBD, on May 9, 2024, Plaintiff sent the first letter of intent to the attendees of the May 3, 2024 meeting.

55.    The first letter of intent contained a list of renovations that Plaintiff intended to perform after obtaining approvals and permits, including the conversion of the Hotel into a studio apartment complex.

56.    As requested by the Public Health and Environment Department, on May 10, 2024, Plaintiff hired 5280 Environmental Consulting to test the Hotel for asbestos and methamphetamine.

57.    On May 11, 2024, methamphetamine and asbestos samples were taken for preliminary testing at the Hotel by 5280 Environmental Consulting. Full sampling was conducted at the Hotel by 5280 Environmental Consulting on June 9, 2024 and July 3, 2024.

58.    On May 14, 2024, Plaintiff sent a second letter of intent to the attendees of the May 3, 2024 meeting to include certain 2021 plans to convert the Hotel to an apartment complex with an ACE Hardware store.

59.    On May 29, 2024, Plaintiff's representatives conferred via zoom call with the Chief Building Official, Mark Guerrero, and others, to discuss Plaintiff's plan to convert the Hotel to an apartment complex with an ACE Hardware store.

60.    The primary focus of the May 29, 2024 zoom call was to discuss change of use and code requirements affiliated with changing the building from a Hotel to an apartment complex and retail space.

61.    Plaintiff remained committed to completing the necessary renovations and updating the Hotel in accordance with the directions and instructions given by the three Departments. Among other things,

    i.    On May 11, 2024, methamphetamine and asbestos samples were taken for preliminary testing at the Hotel by 5280 Environmental Consulting. Full sampling was conducted at the Hotel by 5280 Environmental Consulting on June 9, 2024 and July 3, 2024.

    ii.    On May 21, 2024, Plaintiff submitted preliminary drawings to the PRBD.

    iii.    On June 3, 2024 Plaintiff requested the PRBD for approval to purchase windows for the Hotel.

    iv.    On June 3, 2024, Plaintiff emailed Erik Duran, fire inspector with the City of Pueblo Fire Department, requesting hiring a third-party company to do a code evaluation of the building.  Plaintiff did not receive a response from Mr. Duran to the June 3, 2024 email, but Plaintiff hired Short Elliott Hendrickson ("SHE") to do said code evaluation.

62.    On May 3, 2024, Plaintiff was given permission, in person at a meeting with the PRBD, to clean the building, throw away items, and paint.  Plaintiff was allowed to perform those actions without pulling permits.

63.    What Plaintiff later learned was that during the removal of a freestanding vanity, a valve gave away and the on-site supervisors at the Hotel called someone, without Plaintiff's permission or knowledge, to cap the pipe and replace the affected drywall.

64.     On June 4 or 5, 2024, PRBD called Plaintiff's representative stating that Defendants would like to have permission to enter the property to conduct an inspection and to determine what progress had been made. Plaintiff's representative granted Defendants' request to access the property. Within twenty-four (24) hours from the call, Plaintiff received a Notice of Inspection from the Colorado Department of Public Health and Environment (the "June 5 Notice") demanding that work be stopped in the Hotel.

65.     The June 5 Notice stated that "demo/renovation work is happening at this location[,]" and "employees are not licensed contractors but direct hires by corporate."

66.     On June 5, 2024, Plaintiff received an email from the Chief Building Inspector of the PRBD, Randy Kochis, demanding that all work be stopped at the building until permits were pulled by licensed contractors.

67.     In his June 5, 2024, email, Mr. Kochis stated "PRBD will have a discussion on if an order of disconnection of utilities is warranted.  This discussion will include Electrical, mechanical, plumbing Building divisions as well as the CBO."

68.     In his June 5, 2024, email, Mr. Kochis did not reference any legal authority to shut down utilities, nor did he give an opportunity to the Plaintiff to contest the shutdown.

69.     Without proper notice or due process, the utilities, including power to any fire and burglar alarms, were shut down at the Hotel on June 5, 2024, at 2:53 pm.

70.     Plaintiff did not receive proper notice from the City, the PRBD, or Black Hills indicating that a determination had been made to cut off all utilities at the Hotel.

71.     On June 6, 2024, Plaintiff received an email from Mr. Kochis stating that "with the approval of the CBO Pueblo Regional Building Department *will be* having all utilities

disconnected [at the Hotel].  This is due to unlicensed contractors and unpermitted work being done in this building.  This work includes Plumbing, Electrical, Mechanical and Building."

72.    In his June 6, 2024, email, Mr. Kochis did not reference any legal authority to shut down utilities, provide notice as to when utilities would be shut down, nor did he give an opportunity to the Plaintiff to contest such a shutdown.

73.    On June 6, 2024, Plaintiff's representative responded to Mr. Kochis' email.  Among other things, Plaintiff's representative explained that upon receipt of the June 5 Notice, Plaintiff investigated the statements made therein and discovered that during removal of a freestanding vanity, a valve gave way, and the on-site supervisors called someone, without Plaintiff's permission, to cap the pipe and replace the affected dry wall.  It was an emergency situation which required immediate action to mitigate further damage.

74.    In her June 6, 2024, email, Plaintiff's representative explained that anything outside of cleaning and throwing away items (Plaintiff was permitted to clean and throw away items without pulling permits by the PRBD on May 3, 2024 (see ¶ 62)) was not approved by Plaintiff. In her June 6, 2024, email, Plaintiff's representative assured Mr. Kochis that all work had stopped at the Hotel.

75.    In her June 6, 2024, email, Plaintiff's representative reiterated Plaintiff's commitment to completing the necessary items to bring the Hotel up to Code in accordance with the directions and instructions given by the PRBD and the other departments.

76.    With respect to utility disconnection, in her June 6, 2024, email, Plaintiff's representative requested that the power not be turned off because electrical services at the Hotel

were vital for purposes of security staff monitoring for the prevention of break-ins and for the fire alarm system to remain operable.

77.     Plaintiff received no response from Mr. Kochis or anyone else to the June 6, 2024, email.

78.     Despite knowing the importance of having electrical services at the Hotel, the City and the PRBD failed to provide alternative options (for example, temporary power) for Plaintiff to keep the security and fire systems operable.

79.     Despite Plaintiff's objections, and the recommendation made by the Pueblo Fire Department on May 3, 2024, to keep electricity operable at the Hotel for safety, electrical services were improperly and intentionally terminated at the Hotel on June 5, 2024, leaving Plaintiff's property compromised and vulnerable to theft, vandalism, and other destructive elements.

80.     The City's and the PRBD's conduct were willful and wanton with respect to the termination of utilities at the Hotel without regard to consequences or the safety or rights of Plaintiff.

81.     The City and the PRBD had knowledge of the danger posed to Plaintiff and members of the community by wrongfully terminating the utility services.

82.     After the utilities were shut down, it was no longer safe for Plaintiff's security team to monitor the property 24/7 and, thus, Plaintiff removed the security team from the Hotel and boarded up the building.

83.     Even after the utilities were shut down at the Hotel on June 5, 2024, Plaintiff continued working with the three Departments to remedy the property's violations to pass the inspections and renew its business license.

84.     On June 13, 2024, Plaintiff submitted the 5280 Environmental Consulting's methamphetamine results to the Public Health and Environment Department, the PRBD, and the Mayor.

85.     On July 3, 2024, Plaintiff's representatives met online with representatives of the City of Pueblo Subdivision Review Committee to discuss plans and raise security concerns such as water supply, parking, drainage, fire access, water line for hydrant, sprinklers, fire rating, possible ways to use the space above the proposed Ace Hardware store, drive/entrance/exit, trucks and deliveries, and asbestos and methamphetamine testing updates.

86.     On July 3, 2024, at the request of Mr. Guerrero, Chief Building Official of PRBD, Plaintiff provided a status update with respect to the asbestos and methamphetamine testing via email.

87.     In that July 3, 2024, email, Plaintiff explained the difficulty in conducting 3 tests in 100% of the building as Plaintiff's environmental consultant (All-Phase Environmental Consultants, Inc.) told Plaintiff that testing is usually 10-20% of the building, a sample from which extrapolation could be made.  The very experienced and highly respected consultant who has worked with the City and the Pueblo Health and Environment Department for years told Plaintiff that she had never before been required by the City or the Pueblo Health and Environment Department to test 100% of a building.  She opined that the City and the Pueblo Health and Environment Department were intentionally making compliance impossible.

88.     On July 5, 2024, Plaintiff hired Short Elliott Hendrickson ("SHE") to conduct a code analysis of the proposed design for the Hotel, mainly the conversion of the Hotel into affordable micro-apartments.

89.     On July 8, 2024, Plaintiff submitted the 5280 Environmental Consulting' asbestos results to the Public Health and Environment Department (Vicki Carlton, program manager).

90.     On August 6, 2024, SEH produced its Code Review.

91.     On August 28, 2024, Plaintiff hired another company, All-Phase Environmental Consultants, Inc., to conduct methamphetamine testing at the Hotel.

92.     On September 4, 2024, Plaintiff informed the Department of Public Health and Environment that Plaintiff had signed a contract with All-Phase Environmental Consultants, Inc. to conduct methamphetamine testing at the Hotel and said testing was to take place on September 16, 2024.

93.     On September 24, 2024, Jeffrey Hegg (SEH) hosted an online meeting with Plaintiff's representatives, Mr. Guerrero and Mr. Knight (fire inspection at the Pueblo Fire Department), to discuss the Code Review prepared by SEH.  During the September 24, 2024, online meeting, Plaintiff's architect team at SEH discussed their preliminary code analysis and asked questions, and requested clarifications from Mr. Guerro and Mr. Knight based on Plaintiff's plans.

94.     On September 30, 2024, Plaintiff submitted the Code Study, updated September 30, 2024, to the PRBD.

95.     On September 30, 2024, Plaintiff submitted the preliminary plans to Mr. Guerrero and Chief Plans Examiner, Carlos Atilano, for DCR review.

96.     On October 2, 2024, Plaintiff hired All-Phase Environmental Consultants, Inc. to conduct asbestos testing at the Hotel.

97.     At the end of October 2024, while conducting asbestos testing at the Hotel by representatives of All-Phase Environmental Consultants, Inc., these representatives observed that the Hotel was occupied by unauthorized individuals after the chain locking the building was broken, and furniture was pushed against the entrance.

98.     Upon notice that the Hotel was occupied by unauthorized individuals, on October 31, 2024, Plaintiff informed Mr. Guerrero via email of the dangerous situation.

99.     On November 5, 2024, Mr. Guerrero responded to Plaintiff's email, suggesting that Plaintiff make an application for a permit for temporary power.

100.    Despite Plaintiff's objections, concerns, and evidence of breaking and entering at the Hotel, the PRBD, upon information and belief, in collaboration with the City and its Mayor, refused to order restoration of power to the Hotel and merely suggested that Plaintiff make an application for a permit for temporary power.

101.    The suggestion, made on November 5, 2024, was futile because, by that time, the Hotel's security equipment, fire alarm system, and other items had already been stolen from the Hotel and the Hotel was completely stripped of its fixtures, wiring, and copper.

102.    Upon information and belief, the actions of these public entities and officials against Plaintiff were motivated by "more than 1600" police calls complaining about Mr. Rahmani's hotel, as noted by Mayor Graham.

103.    However, nearly all of those calls were based on the criminal activity of the homeless population in and around the Hotel, not the customers of the Hotel.

104.     Plaintiff diligently and repeatedly reached out to the Pueblo Police Department seeking assistance with the various issues resulting from the homeless population near the Hotel to no avail.

105.     On or about March 7, 2025, a petition entitled "Recall Mayor Heather Graham" (the "Petition") was certified for signature collection.

106.     The Petition lists eleven grounds for her removal, including the assertion that she used "police and fire department staff to retaliate against small business owners and others who oppose her."  The Petition further claims that she allowed "illegal ordinances and practices to be proposed, leading to costly legal expense" which is reasonably interpreted as tied to the enforcement actions against business or individuals.

107.     In a March 17, 2025, interview with KKTV, Mayor Graham addressed the recall Petition's accusations about police and fire personnel, suggesting that the claims likely refer to her administration's enforcement actions against non-compliant businesses.  She also stated:

> There is something when it comes to permitting, and a phone call makes it all the way up to my office, you know. I sit down with whoever the individual is and try to make sure they're compliant or see what my department can do to help them get to compliance…

108.     Mayor Heather Graham never sat down with Plaintiff to try to see what she could do to get Plaintiff "into compliance"; rather, upon information and belief, she instructed her "department" and others to make sure Plaintiff was not deemed in compliance so that the business could be shut down on the specious basis of public safety measures.

109.     As of the date of the filing of this Complaint, Plaintiff has received no compensation from the City, its Mayor, or PRBD for the damages caused to the Plaintiff and its property.

110.     Plaintiff seeks compensation for all of Defendants' improper and wrongful acts, which have resulted in the total destruction of the Hotel.

111.     Pursuant to the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24-10-101 et seq., Plaintiff provided timely written notice of its claims against Defendants City of Pueblo and PRBD within 180 days of discovering the injuries caused by Defendants' actions, as required by C.R.S. § 24-10-109.

112.     Plaintiff's state-law claims against the City and PRBD fall within exceptions to sovereign immunity under the Colorado Governmental Immunity Act, including C.R.S. § 24-10-106(1)(f) (operation of a public utility or service) for the negligent or willful termination of utility services, and C.R.S. § 24-10-106(1)(a) (operation of any public building or facility) to the extent the conduct involved code enforcement at a regulated property. Plaintiff's claims further allege willful and wanton conduct, which removes immunity under applicable provisions.

113.     Plaintiff provided notice of its claims against the City and its Mayor on December 5, 2024 (the "Original Notice of Claim").

114.     On January 29, 2025, Plaintiff provided a first amended notice of its claims to the City and its Mayor ("First Amended Notice of Claim").  The First Amended Notice of Claim relates back to the Original Notice of Claim as the factual basis of the claim, the nature and extent of the injury claimed remain the same.  The reason for the First Amendment Notice of Claim was to rectify the name of Plaintiff.

115.     On or about March 28, 2025, Plaintiff learned from counsel for the City and Mayor Graham that the City is allegedly not the entity responsible for the decision to revoke access to the

utilities.  Counsel represented that Pueblo Regional Building Department is the entity responsible for making that decision.

116.    On or about May 19, 2025, Plaintiff provided a second amended notice of its claims to the City, its Mayor, PRBD, and the County ("Second Amended Notice of Claim").  The Second Amended Notice of Claim relates back to the Original Notice of Claim as the factual basis of the claim, the nature and extent of the injury claimed remain the same.  The reason for the Second Amendment Notice of Claim was to add the Pueblo Regional Building Department and the County of Pueblo to the Original Notice of Claim and gave those public entities proper notice.

117.    Given Defendants' actions more fully described in the preceding paragraphs, Plaintiff found itself in a situation in which selling the Hotel as quickly as possible at any price was the only way to end the ongoing issues with the Defendants.

118.    On October 27, 2025, Plaintiff sold the Hotel through a national auction platform, Ten-X, operated by LoopNet.

119.    Although the Hotel had been previously appraised at $5,000,000.00, because of the damages it had suffered from break-ins and theft due to Defendants' conduct, including the shutdown of utilities without proper notice or due process, the Hotel was sold for a reduced price of $330,000.00.

120.    From the sale proceeds ($330,000.00), Plaintiff paid $240,000.00 to the City for a tax audit.

121.    The remaining sale proceeds were used by Plaintiff to make substantial repairs to the Hotel in an effort to comply with numerous code-enforcement violations caused by vandalism and destruction by the homeless populations. In addition, Plaintiff's representative was required

to expend approximately $50,000.00 in out-of-pocket funds to complete the closing of the Hotel's sale.

122.    From approximately July 2, 2025 through November 4, 2025 (even after), Plaintiff has repeatedly received citations from the County relating to alleged violations involving litter, graffiti, board-up requirements, and prohibited occupancy at the Hotel.

123.    Each time Plaintiff corrected the conditions identified in a citation, those same conditions were recreated within days by the homeless population occupying or frequenting the Hotel, resulting in Plaintiff receiving additional citations for issues beyond its control.

124.    Despite Plaintiff's ongoing mitigation efforts, the County continued issuing citations, including a citation dated November 4, 2025—after the Hotel had already been sold on October 27, 2025.

### FIRST CAUSE OF ACTION
### (Inverse Condemnation Against the City)

125.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

126.    By requiring unprecedented and burdensome requirements to pass the necessary inspections in order to renew its business license, slowing down the inspection approval process, and refusing to cooperate with Plaintiff and, in concert with the PRBD, by influencing its decision to shut down the utilities at the Hotel, without proper notice or due process, the City damaged Plaintiff's property interest in the Hotel, effectively rendering the Hotel valueless.

127.    The actions of the City have substantially deprived Plaintiff of the use, possession, and enjoyment of the Hotel.

128.    The actions of the City were intentional.

129.    Pursuant to the public statements of Mayor Graham, the actions of the City were allegedly made for the benefit of the public.

130.    Plaintiff has not been justly compensated for the actions of the City.

131.    The City has the power of eminent domain.

132.    The actions of the City have caused Plaintiff damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Procedural Due Process Violation Against the City and PRBD)**

133.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

134.    Plaintiff's interest in the Hotel is a protected interest.

135.    The action of PRBD, in concert with the City and its Mayor, to shut down and revoke access to the utilities at the Hotel, was done without proper notice or an opportunity to contest the shutdown.

136.    The action of PRBD, in concert with the City and its Mayor, to shut down and revoke access to the utilities, interfered with Plaintiff's property interest in the Hotel.

137.    The action of PRBD, in concert with the City and its Mayor, to shut down and revoke access to the utilities at the Hotel via email (without reference to any legal authority or opportunity to contest the decision and without providing alternatives for Plaintiff to keep the security and fire systems operable) was constitutionally insufficient and failed to afford an appropriate level of process.

138.    Pursuant to the Pueblo Code of Ordinances, the City was required to initiate an action for injunctive relief in any court of competent jurisdiction to compel compliance, which the City failed to do.

139.    The actions of the City and PRBD resulted in the effective total destruction of the Hotel.

## THIRD CAUSE OF ACTION
### (Substantive Due Process Violation Against the City and PRBD)

140.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

141.    The action of PRBD, in concert with the City and its Mayor, to deliberately ignore the Fire Department's explicit recommendation to maintain power for life-safety reasons and to shut down power and revoke access to the utilities at the Hotel (without proper notice and opportunity to contest and without providing alternatives such as temporary power for security and fire systems), was done in a manner so arbitrary and outrageous that it "shocks the judicial conscience" under the circumstances of a non-emergency code-enforcement action against a closed property.

142.    The PRBD, in concert with the City and its Mayor, arbitrarily abused their authority when shutting down and revoking access to the utilities at the Hotel.

143.    The PRBD, in concert with the City and its Mayor, employed their authority as an instrument of oppression when revoking access to the utilities at the Hotel.

144.    Instead of issuing a Stop Work Order for the alleged unpermitted work being done in this building, the PRBD, in concert with the City and its Mayor, terminated access to the utilities.

145.    Upon information and belief, the action of shutting down the utilities was motivated by Mayor Graham's and the City's animosity toward Plaintiff, as evidenced by defamatory statements and a collaborative plan by the public entities and officials to close Plaintiff's business in Pueblo.

## FOURTH CAUSE OF ACTION
### (Equal Protection Violation Against All Defendants)

146.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

147.    Plaintiff's interest in the operation of the Hotel and the renewal of its business license is a protected property interest under the Fourteenth Amendment to the United States Constitution and Article II, Section 25 of the Colorado Constitution.

148.    Defendants, acting under Colorado state law, treated Plaintiff differently from other similarly situated hotels in Pueblo with respect to business license renewals and code enforcement, without a rational basis, in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, as well as Article II, Section 25 of the Colorado Constitution.

149.    From 2012 to 2023, the City and PRBD routinely approved Plaintiff's business license renewals based on consistent building conditions, but starting in 2023, Defendants imposed new and arbitrary inspection requirements, continuously updated lists of demands, and slowed the license renewal process, which were not imposed on other hotels in Pueblo.

150.    Defendants, acting under Colorado state law, treated Plaintiff differently from other similarly situated hotels in Pueblo with respect to business license renewals and code enforcement, without a rational basis, in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, as well as Article II, Section 25 of the Colorado Constitution.

151.    From 2012 to 2023, the City and PRBD routinely approved Plaintiff's business license renewals based on consistent building conditions, but starting in 2023, Defendants imposed new and arbitrary inspection requirements, continuously updated lists of demands, and slowed the license renewal process, which were not imposed on other hotels in Pueblo that (upon information

and belief) had comparable building age, condition, occupancy rates, and/or histories of code violations or police calls.

152.    Upon information and belief, these other hotels continued to receive timely license renewals and were not subjected to repeated re-inspections, continuously evolving requirement lists, or utility disconnections for analogous unpermitted work or code issues.

153.    The Defendants' differential treatment was motivated by Mayor Graham's political agenda to score points with voters by targeting the Hotel as a scapegoat for crime in Pueblo, falsely associating it with criminal activity driven by the area's homeless population.

154.    The Defendants' actions, including the imposition of unprecedented requirements, lack of cooperation, and termination of utilities on June 5, 2024, without proper notice or alternatives, were arbitrary and lacked any legitimate governmental purpose, constituting a "class-of-one" violation of Plaintiff's equal protection rights.

155.    The Defendants' discriminatory conduct caused Plaintiff to close the Hotel, rendering the property valueless, and ultimately selling the Hotel at a reduced price, depriving Plaintiff of its constitutionally protected property interest, resulting in damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (First Amendment Retaliation Against All Defendants)

156.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

157.    Plaintiff engaged in constitutionally protected activity under the First Amendment to the United States Constitution by communicating with Defendants, objecting to their actions, and advocating for the renewal of its business license and the restoration of utilities, including through emails and meetings with representatives of the City, PRBD, and other departments.

158.    Defendants, acting under color of state law, retaliated against Plaintiff for engaging in protected speech and advocacy activities by imposing arbitrary inspection requirements, slowing the license renewal process, and terminating utility services to the Hotel on June 5, 2024, without proper notice or due process, in violation of the First Amendment and 42 U.S.C. § 1983.

159.    The Defendants' adverse actions, including the utility shutoff and continued refusal to restore power despite Plaintiff's objections and requests, were taken in direct response to Plaintiff's protected activities, as evidenced by the temporal proximity between Plaintiff's communications with the City, PRBD, and other departments (beginning in April-May 2024) and the utility termination (June 5, 2024).

160.    The Defendants' actions would chill a person of ordinary firmness from continuing to engage in protected speech or advocacy, as they resulted in the closure (and ultimate sale) of the Hotel, loss of security and fire systems, and catastrophic damage to the property.

161.    Upon information and belief, the Defendants' retaliatory conduct was motivated, in part, by Mayor Graham's desire to suppress Plaintiff's objections and advance her political agenda to close the Hotel.

162.    The Defendants' retaliatory actions caused Plaintiff to suffer damages, including the total destruction of the Hotel and loss of business, in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**(Tortious Interference with Prospective Business Relations Against All Defendants)**

163.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

164.    Plaintiff had regular and recurring contractual relationships with its customers at the Hotel.

165.    Defendants had knowledge of the business in which Plaintiff engaged and had a reasonable knowledge of Plaintiff's prospective, recurring contractual relationships.

166.    Defendants intentionally and improperly interfered with Plaintiff's reasonable and recurring business relationships by various willful and wanton actions including, without limitation, the following: (i) changing and increasing the requirements for Plaintiff to pass the necessary inspections to renew its business license; (ii) slowing down the inspection approval process; (iii) defamatory statements by Mayor Graham that impacted the reputation of the Plaintiff; and (iv) termination of electrical services without proper notice or due process.

167.    Defendants' actions caused Plaintiff to close the Hotel and prevented Plaintiff from reopening the Hotel in a timely manner.

168.    Defendants' actions were improper.

169.    Defendants' actions caused the customers at the Hotel not to continue legacy or prospective relationships with Plaintiff.

170.    Defendants' actions prevented Plaintiff from acquiring and/or continuing the prospective relations with its customers.

171.    Defendants' actions prevented the formation of the prospective contractual relations between Plaintiff and its customers.

172.    The actions of the Defendants are the direct result of the loss of the benefits of the prospective contractual relationships between Plaintiff and its customers.

173.    There is a reasonable likelihood or reasonable probability that contracts would have resulted between Plaintiff and its customers, but for Defendants' actions.

174.    Plaintiff has been damaged as a result of the intentional interference with prospective business relationships in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Civil Conspiracy Against All Defendants)

175.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

176.    Defendants, acting under color of state law, conspired to deprive Plaintiff of its constitutional rights under the Fifth, Fourteenth, and First Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, and to tortiously interfere with Plaintiff's business relations under Colorado law, by agreeing to unlawfully target and shutter the Hotel.

177.    The Defendants had a tacit or express meeting of the minds to accomplish the unlawful objective of closing the Hotel through a coordinated campaign, as evidenced by their concerted and temporally linked actions, including Mayor Graham's receipt of the May 3, 2024 meeting minutes on or about May 8, 2024, her public statements on April 25, 2024 aligning with the enforcement trajectory, the PRBD's subsequent utility shutoff decision on June 5, 2024 despite internal safety objections, and the absence of similar aggressive enforcement against other comparable properties.

178.    Upon information and belief, the Defendants' agreement to unlawfully close the Hotel was driven by Mayor Graham's political agenda to falsely associate the Hotel with crime and claim progress on her campaign promise, as demonstrated by her receipt of meeting minutes on or about May 8, 2024, and her subsequent actions.

179.    The Defendants committed unlawful overt acts in furtherance of the conspiracy, including the termination of utilities at the Hotel, which rendered the Hotel vulnerable to looting

and vandalism, and the imposition of discriminatory requirements to renew Plaintiff's business license not applied to other hotels.

180.    The Defendants' conspiratorial actions directly caused Plaintiff's damages, including the total devaluation of the Hotel, loss of business relationships, and deprivation of constitutional rights, in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (In the alternative, Negligence Against All Defendants)

181.    Plaintiff incorporates all the preceding paragraphs as though fully set forth herein.

182.    The Defendants have a legal duty of reasonable care to the Plaintiff to take protective action to prevent a foreseeable risk of injury.

183.    The Defendants breached their duty to the Plaintiff through their negligent or willful and wanton conduct by improperly terminating electrical services to the Hotel after objections from Plaintiff and after the recommendation of the Fire Department that such termination of power would render the Hotel's security system and fire alarm system inoperable.

184.    Despite such information, the Defendants nonetheless improperly terminated electrical services to the Hotel on June 5, 2024.

185.    Plaintiff was injured as a direct result of the Defendants' breach, resulting in property damage and ultimate sale of the Hotel for a reduced price.

186.    Had the Defendants not improperly terminated the electrical utility service at the Hotel (and issued a Stop Work Order instead); Plaintiff's security system and fire alarm system would have been operable and would have prevented the damage to the Hotel.

187.    Defendants' negligence caused Plaintiff damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment as follows:

A.      Awarding compensatory damages, including but not limited to the difference between the Hotel's pre-harm appraised value ($5,000,000.00) and sale price ($330,000.00), lost business revenue, development costs ($500,000.00), tax audit payments ($240,000.00), out-of-pocket mitigation expenses ($50,000.00), and other economic losses;

B.      Awarding punitive damages against individual defendants to the extent permitted by law;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorney fees pursuant to 42 U.S.C. 1988 and other applicable law, experts' fees, and expenses; and

D.      Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted this 3rd day of February 2026.


 *s/ Mason C. Simpson*
Mason C. Simpson, #50491
BUSINESS LAW GROUP
90 S Cascade Ave., Ste. 400
Colorado Springs, CO 80903
Tel: (719) 355-8840
Email: mason@businesslawgroup.us
***Attorney for Plaintiff***